IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CEDRIC REID,

                          Plaintiff,                    Civil Action No.
                                                        9:12-CV-0533 (TJM/DEP)
         v.

G. DONALD, *et al.,*

                          Defendants.

_____


APPEARANCES:                                     OF COUNSEL:

<u>FOR PLAINTIFF</u>:

CEDRIC REID, *Pro Se*
00-A-6988
Livingston Correctional Facility
P.O. Box 91
Sonyea, NY 14556

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN                ADRIENNE J. KERWIN, ESQ.
New York State Attorney General          Assistant Attorney General
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Cedric Reid, a New York State prison inmate, has commenced this civil rights action against several employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. Plaintiff's claims arise from five discrete series of events occurring at the prison facility in which he was housed at the relevant times between October 2008 and March 2009.

In response to plaintiff's complaint, defendants seek dismissal of his claims for failure to state a claim upon which relief may be granted. In their motion, defendants assert that any claims arising out of the first four incidents are time barred, and that the allegations regarding the fifth both fail to state a cognizable claim and fail to allege sufficient facts plausibly suggesting the personal involvement of the defendants named in the complaint. For the reasons set forth below, I recommend that defendants' motion be granted, but that plaintiff be granted leave to amend one of his claims.

2

I.      BACKGROUND[1]

Reid is a prison inmate currently being held in the custody of the DOCCS. *See generally* Complaint (Dkt. No. 1). Although he is currently housed elsewhere, at the times relevant to this action, plaintiff was confined at the Auburn Correctional Facility ("Auburn"), located in Auburn, New York. *Id.* at 5. According to the allegations contained in plaintiff's complaint, during the course of his incarceration at Auburn, he experienced several events that deprived him of his civil rights. I have summarized the allegations pertaining to each incident below.

A.      Incident Arising on October 5, 2008

In the morning of October 5, 2008, a disagreement occurred between plaintiff and defendant G. Donald, a corrections officer stationed at Auburn. Complaint (Dkt. No. 1) at 5-6. The disagreement arose when defendant Donald accused Reid of committing a theft in the mess hall, and ordered that he put down his tray and leave the area. *Id.* at 6. Plaintiff resisted and demanded that he receive his breakfast meal. *Id.* Plaintiff was then ordered by Donald to

_____

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

surrender his identification card, which he, as an inmate, is required to carry at all times outside of his cell.  *Id.*

Plaintiff was subsequently served with a misbehavior report on October 6, 2008, accusing him of committing six separate violations of prison rules based upon events from the previous day in the mess hall. Complaint (Dkt. No. 1) at 6. Beginning on October 9, 2008, a tier II disciplinary hearing was conducted by defendant Leubner, a corrections lieutenant stationed at Auburn, to address the charges lodged against plaintiff.[2]  *Id.* at 6-7.   On October 21, 2008, at the conclusion of the hearing, Reid was found guilty of three of the offenses charged, and acquitted of the other three.[3]  *Id.* at 7.

Plaintiff appealed the hearing officer's determination to the superintendent at Auburn, defendant H.D. Graham, on October 24, 2008.  Complaint (Dkt. No. 1) at 7-8.  On November 4, 2008, defendant Graham affirmed the disciplinary hearing determination.  *Id.* at 8.  Plaintiff thereafter filed two grievances

---

[2]        The DOCCS conducts three types of inmate disciplinary hearings.  *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998).  Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges.  *Hynes*, 143 F.3d 655 n.1.  Tier II hearings involve more serious infractions, and can result in penalties that include confinement for a period of time in the SHU.  *Id.*  Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits.  *Id.*

[3]        Plaintiff's complaint does not disclose the sentence imposed by the hearing officer as a result of the guilty finding on three counts.

concerning the incident, the first on October 17, 2008, designated as No. AUB53051-08, and the second on December 24, 2008, No. AUB53441-08. Complaint (Dkt. No. 1) at 8.  Plaintiff unsuccessfully pursued both grievances through to the DOCCS Central Office Review Committee ("CORC").  *Id.*  The CORC issued its final decision on grievance number AUB53051-08 on December 17, 2008, and grievance number AUB53441-08 was exhausted on January 30, 2009.  *Id.*

## B.    Incident Arising on November 3, 2008

On or about November 3, 2008, while enrolled in required vocational programming at Auburn, plaintiff complained to defendant C. Giannone, a teacher of building maintenance, that the ventilation system in the program area was inadequate to eliminate the sawdust fumes generated by the class, and, as a result, the fumes aggravated his pre-existing pulmonary condition.  Complaint (Dkt. No. 1) at 8-9.  On the day after voicing that complaint, plaintiff was placed in keeplock confinement.  *Id.* at 9.  A misbehavior report was subsequently issued by defendant Giannone on November 5, 2008, accusing him of failing to follow a direct order, theft and possession of state property, and smuggling.[4]

---

[4]      Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL

*Id.* The charges were ultimately dismissed, however, at a tier II hearing held on November 8, 2008. *Id.* at 10. Plaintiff filed a grievance concerning the matter on December 4, 2008, No. AUB53327-08, and pursued that grievance through to the CORC. *Id.* The CORC issued a final decision upholding the denial of that grievance on February 4, 2009. *Id.*

C.    Incident Arising on November 19, 2008

Plaintiff was admonished on November 19, 2008, by defendant G. Farinelli, a teacher, for allegedly writing grievances while in class. Complaint (Dkt. No. 1) at 10. On the following day, plaintiff was again accused of utilizing class time to prepare grievances, and was therefore removed from the class and placed in pre-disciplinary hearing confinement. *Id.* at 11. On November 21, 2009, plaintiff was served with a misbehavior report, authored by defendant Farinelli, accusing him of disobeying a direct order, interference with staff, creating a disturbance, and possessing a forbidden article. *Id.* at 11.

A tier II hearing was convened on November 26, 2008, by defendant

---

160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

Raymond Head, a corrections lieutenant stationed at Auburn, to address the charges contained in that misbehavior report. *Id.* Plaintiff alleges that, although defendant Head commenced the proceeding on the record, he shortly stopped the recording, rewound the tape, and started the hearing over, effectively erasing from the recording a portion of the proceeding. *Id.* at 11-12. Plaintiff also contends that he was not assigned an effective assistant to help him prepare for the hearing, and that the hearing was adjourned to December 8, 2008, so plaintiff could locate unnamed witnesses who, he believed, would testify on his behalf. *Id.* at 12. In light of plaintiff's inability to locate the sought-after witnesses, and after he objected to the hearing proceeding, plaintiff was found guilty on all four counts. *Id.* at 13.

Plaintiff appealed the hearing officer's determination to defendant Graham on December 11, 2008. Complaint (Dkt. No. 1) at 13. That appeal was rejected, and the hearing officer's determination was affirmed by decision dated December 22, 2008, but not received by the plaintiff until December 29, 2008. *Id.* at 13.

Plaintiff submitted a grievance concerning the matter on December 4, 2008, designated as No. AUB53310-08. Complaint (Dkt. No. 1) at 14. That grievance was pursued by the plaintiff through to the CORC, and denied at all

levels.  *Id.*  The CORC issued its final decision denying review of that

determination on January 28, 2009.  *Id.*

     D.    Incident Arising on February 1, 2009

On February 1, 2009, while attending lunch at the Auburn south mess

hall, plaintiff was informed by defendant Donald that he had been removed from

the cold alternative diet ("CAD"), a food program primarily intended for inmates

with Jewish religious beliefs.  Complaint (Dkt. No. 1) at 14.  In his complaint,

plaintiff alleges that he "has reason to believe that the actions performed by

defendant Donald[] were motivated by retaliation for previous

complaints/grievances[.]"  *Id.*

Plaintiff requested that J. McNamara, a corrections sergeant stationed at

Auburn and not named as a defendant in this action, investigate his removal

from the CAD program.  *Id.* at 15.  After inquiring into the matter, McNamara

informed the plaintiff that he was being denied CAD meals based upon

allegations by defendant Donald that he had eaten food from a regular diet tray.

*Id.* at 15.  On the following day, in an act that he concedes was unauthorized,

plaintiff went to the north mess hall for the purpose of obtaining a CAD meal.

*Id.* at 15.  His efforts were thwarted, however, by McNamara, who issued

plaintiff a misbehavior report, and ordered that the plaintiff be confined to his

cell for being in an unauthorized area pending disciplinary proceedings. *Id.*

Plaintiff wrote to the Food Service Department at Auburn on February 2, 2009, seeking information regarding the status of his religious diet. Complaint (Dkt. No. 1) at 15-16. On February 13, 2009, Gino McPartland, the Food Service Supervisor/Administrator at Auburn, advised Reid that he had been removed from the CAD program due to having missed meals. *Id.* at 16; Complaint Exh. B (Dkt. No. 1) at 26.

Plaintiff submitted a written complaint concerning the matter to DOCCS Commissioner Brian Fischer on February 11, 2009, and sent a copy of the complaint to the Auburn superintendent. Complaint (Dkt. No. 1) at 16. The superintendent further referred the complaint to defendant T. McCarthy, a corrections captain stationed at Auburn. *Id.* On March 18, 2009, defendant McCarthy communicated to plaintiff that his complaints had been investigated but that no evidence of any staff misconduct was found. *Id.* Also in response to plaintiff's complaint dated February 11, 2009, defendant Robert Schattinger, the Director of Nutritional Services for the DOCCS, provided plaintiff with a written response on March 2, 2009. *Id.* at 17. On March 19, 2009, defendant Gayle Haponik, the Deputy DOCCS Commissioner for Administrative Services, also responded to plaintiff's complaint. *Id.* Plaintiff's complaint alleges only that

the responses from defendants Schattinger and Haponik "failed to remedy the wrong after learning of the violation by way of written report[.]" *Id.*

On March 10, 2009, plaintiff again wrote to defendant Schattinger, alleging deprivation of his constitutional rights as a result of the withholding of his CAD meals. Complaint (Dkt. No. 1) at 18. Schattinger responded on March 24, 2009, advising plaintiff that he had not changed his decision regarding the matter. *Id.*

Plaintiff filed a grievance concerning the matter, No. AUB5364109, on February 5, 2009. Complaint (Dkt. No. 1) at 20. That grievance was denied at all levels up through the CORC. *Id.* The CORC issued its final decision regarding that grievance on April 8, 2009. *Id.*

E.    Incident Arising on March 30, 2009

On March 30, 2009, plaintiff attended vocational programming at Auburn, where he was asked to sign a form related to safety rules for the class. Complaint (Dkt. No. 1) at 20. Plaintiff refused to sign the form, however, explaining that he was unable to write due to a medical excuse. *Id.* As a result of plaintiff's refusal, the instructor, defendant Giannone, summoned assistance from defendant Murray, a corrections sergeant. *Id*. After confirming that plaintiff would not sign the safety form, defendant Murray escorted Reid to a cell

and placed him under pre-disciplinary confinement. *Id.*

On March 31, 2009, plaintiff was issued a misbehavior report accusing him of engaging in violent conduct, creating a disturbance, interference with an employee, and refusing to obey a direct order. Complaint (Dkt. No. 1) at 21. A tier II hearing was conducted, beginning on April 4, 2009, to address those charges. *Id.* At the conclusion of the hearing, plaintiff was found guilty of creating a disturbance and interference with an employee, and was sentenced to a period of thirty days of keeplock confinement without privileges. *Id.*

Plaintiff appealed the hearing officer's determination to defendant Graham. Complaint (Dkt. No. 1) at 21. In a decision rendered on April 15, 2009, defendant Graham upheld the conviction but reduced the penalty to twenty days of keeplock confinement. *Id.*

Plaintiff filed a grievance concerning this incident, No. AUB53963-09, on April 14, 2009. Complaint (Dkt. No. 1) at 22. That grievance was denied at all levels up through the CORC. *Id.* The CORC issued its final denial on that grievance on August 12, 2009. *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on March 26, 2012.  Complaint (Dkt. No. 1).  As defendants, his complaint names G. Donald, a corrections officer at Auburn; L. Leubner, a corrections lieutenant at Auburn; H. D. Graham, the Superintendent at Auburn; C. Giannone, an instructor at Auburn; G. Farinelli, also employed as a teacher at Auburn; R. Head, a corrections lieutenant at the facility; T. McCarthy, a corrections captain at Auburn; M.E. Murray, a corrections sergeant at the facility; H. Matasar, a Jewish Rabbi assigned to Auburn; R. Schattinger, the Director of Nutritional Services for the DOCCS; G. Haponik, the Deputy Commissioner of Administrative Services for the Agency; and C. Lindquist, Assistant Director of the Inmate Grievance Program for the DOCCS.[5]  *Id.* at 2.  All defendants are sued in both their individual and official capacities.  *Id.* at 5.  Generally, and although plaintiff's complaint is not a model of clarity, it appears that he asserts a retaliation claim against defendants

_____

[5]       Plaintiff's complaint also named Lucian J. LeClaire, Jr., the Deputy Commissioner of the DOCCS, as a defendant.  Complaint (Dkt. No. 1) at 3.  LeClaire, however, is not named in the body of the complaint, nor did plaintiff provide the United States Marshals Service the necessary papers to serve LeClaire.  Accordingly, the court issued a text order on September 26, 2012, directing that plaintiff advise the court as to whether he intended to pursue claims against LeClaire in this case.  Text Order Dated Sept. 26, 2012.  Plaintiff failed to timely respond, but he did advise the court that LeClaire "was wrongfully listed as a defendant by the plaintiff."  Dkt. No. 39 at 5.  Accordingly, on January 18, 2013, Senior District Judge Thomas J. McAvoy issued a text order dismissing LeClaire from the action.  Text Order Dated Jan. 18, 2013.

arising from allegations that they issued false misbehavior reports against him and removed him from the CAD program out of retaliation for him filing grievances while confined at Auburn.

On December 12, 2012, defendants moved seeking dismissal of plaintiff's claims on a variety of grounds, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 37. In their motion, defendants argue that (1) all claims accruing prior to March 26, 2009 are time barred; (2) plaintiff's remaining claim, accruing after March 26, 2009, lacks merit; and (3) the complaint fails to allege personal involvement on the part of any of the named defendants in any constitutional violation alleged. *See generally id.* Plaintiff has since responded in opposition to the pending motion. Dkt. No. 39.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Standard of Review

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546

(1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

### B.    Statute of Limitations

Plaintiff's claims are brought under 42 U.S.C. § 1983.  *See generally* Complaint (Dkt. No. 1).  In support of their motion to dismiss, defendants argue that all of plaintiff's claims accruing before March 26, 2009 are barred by the statute of limitations governing plaintiff's claims.  Defs.' Memo. of Law (Dkt. No. 37-1) at 3-4.

The applicable limitations period for a section 1983 action is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *accord*, *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).  Accordingly, in New York, the statute of limitations for a section 1983 action is three years. N.Y. C.P.L.R. § 214(5); *see also Connolly v. McCall*, 254 F.3d 36, 40-41 (2d

Cir. 2001) ("[The plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions[.]"); *accord*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1138, 1156 (2d Cir. 1995). A claim arising under section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly*, 254 F.3d at 41 (internal quotation marks omitted).

For purposes of gauging the timeliness of his claims, and in light of the mailbox rule governing *pro se* prisoner actions in this circuit, plaintiff's complaint in this case is deemed to have been filed on March 22, 2012, the date appearing on the face of his complaint, rather than March 26, 2012, upon which the court received it. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (applying *Houston*, which was a habeas corpus case, to cases arising under section 1983); *Torres v. Irvin*, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998) ("Absent evidence to the contrary, the Court assumes that the prisoner gave his petition to prison officials for mailing on the date that he signed it." (alterations omitted)); *accord*, *McPherson v. Burge*, No. 06-CV-1076,

2009 WL 1293342, at *9 (N.D.N.Y. May 5, 2009) (Suddaby, J.) (citing cases); *but see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (suggesting that the operative filing date is that on which the court clerk receives the pleading).[6]  Accordingly, all causes of action in this case that accrued prior to March 22, 2009, would appear to be untimely, absent a basis for tolling all or part of the limitation period.

As was described above, plaintiff's complaint arises from five separate incidents occurring while he was confined at Auburn.  *See generally* Complaint (Dkt. No. 1).  Focusing first on the incidents arising on October 5, 2008,

---

[6]     In *Grullon*, the Second Circuit rejected the district court's finding that granting the plaintiff leave to amend would futile.  720 F.3d at 132.  Specifically, the district court found that, where the plaintiff's letter to the defendant was dated April 18, and the complaint was dated May 1, the plaintiff had failed to give the defendant the requisite fifteen days (under the Connecticut state law) to act prior to filing his lawsuit.  *Id.*  In remanding to the district court to allow plaintiff to file an amended complaint, the Second Circuit made the following observation:

> First, although the court assumed *arguendo* (quite generously) that [the plaintiff's l]etter dated April 18 would have been received by the Warden on that date, the finding that the complaint that was 'dated' May 1, . . . was 'filed' on May 1, . . . is contrary to the district court records. The complaint as it appears in the record was date-stamped by the district court as 'FILED 2010 MAY 18'; and the district court docket sheets state that the complaint was filed on May 18.

*Id.*  Following this finding by the Second Circuit, it is unclear whether the mailbox rule, as articulated by the Supreme Court in *Houston* and applicable to habeas cases, remains viable in section 1983 cases, as articulated by the Second Circuit in *Dory*. Absent explicit guidance from the Second Circuit, I am inclined to continue applying the rule of construing a pleading's filing date the date appearing on the face of the document, rather than the date the clerk receives it.

18

November 3, 2008, or November 19, 2008, I find that they are time barred because they accrued, and plaintiff fully exhausted all grievances related to those incidents, no later than February 2009. *Id.* at 5-14. Plaintiff argues that the court should apply equitable tolling to the claims arising from those incidents because in a previous case filed by him in this district, *Reid v. Bezio*, No. 10-CV-0609 (NAM/CRH), he requested leave to supplement his complaint to include the allegations related to the incidents he includes in his complaint for this action. Plf.'s Resp. (Dkt. No. 39) at 6-7. Plaintiff's motion to supplement was denied by Magistrate Judge David R. Homer on November 18, 2011, upon a finding that "the new claims [were] not sufficiently related to those raised in the original complaint and also that granting the motion would be prejudicial to defendants." *Reid*, No. 10-CV-0609, Dkt. No. 74 at 5.

Equitable tolling is a doctrine applied in "'rare and exceptional circumstances,' where [the court finds] that 'extraordinary circumstances' prevented a party from timely performing a required act and that party 'acted with reasonable diligence throughout the period he sought to toll.'" *Czernicki v. U.S. Dep't of Justice*, 137 F. App'x 409, 410, 2005 WL 1498456, at 410 (2d Cir. 2005) (alteration omitted) (quoting *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d

Cir. 2004)).[7]  Generally, the doctrine applies where a statute of limitations has

passed due to "'defective pleading'" or the defendant's "'misconduct'" in

preventing the plaintiff from bringing his claim or learning of the cause of

action.[8]  *Czernicki*, 137 F. App'x at 410-411(quoting *Irwin v. Dep't of Veterans*

*Affairs*, 498 U.S. 89, 96 (1990)).  In this case, plaintiff's argument that his

claims arising from the first three incidents described in his complaint, all of

which accrued in or around October and November of 2008, and were fully

exhausted by February 2009, should not be time barred is unpersuasive.

Plaintiff's request asks the court to ignore the fact that when he filed his motion

to supplement his complaint in the previous action, two-and-a-half years had

elapsed since the commencement of that proceeding, and more than two years

had passed since the latest incident had occurred.  In the first place, a motion

to supplement a pleading is not automatically granted, and a court considering

such a motion has discretion to grant or deny it based on the unique

circumstances of each case.  Moreover, considering plaintiff's litigation history

in this district, it seems unreasonable to infer that plaintiff's ability to either

---

[7]     Copies of all unreported decisions cited in this document have been appended
for the convenience of the *pro se* plaintiff.

[8]     As will be discussed immediately below, the statute of limitations can be tolled
for other reasons, as well, including during the period of time a prisoner-plaintiff's grievance
is being reviewed under the available administrative procedures at a facility, in light of his
requirement to exhaust administrative remedies before filing suit.

initiate a separate action based on the incidents he sought to include in that case, or file his motion earlier in the action was in some way impaired giving rise to a finding of extraordinary circumstances. Simply stated, the reason that the action now pending before the court, with respect to the first of the three incidents, is tardy is the result of matters entirely within plaintiff's control. For these reasons, I find that tolling does not apply to the claims arising from the allegations related to the first three incidents described in plaintiff's complaint.

Turning to the claims arising from allegations related to the fourth incident, I find that they are not time barred because, although plaintiff's claim accrued on February 1, 2009 – the date on which he learned of the alleged constitutional violation (*i.e.*, that defendant Donald had removed him from participation in the CAD program) – it is alleged that he did not exhaust his available administrative remedies until April 8, 2009. Complaint (Dkt. No. 1) at 20. In "the absence of controlling Second Circuit law on this issue and the posture of the other circuits," courts in this circuit have held that the statute of limitations is tolled while a prisoner-plaintiff exhausts the available administrative remedies as required by law. *See Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 418-19 (E.D.N.Y. Mar. 25, 2009) ("The court finds that [the plaintiff] filed this action within the three-year statute of limitations because the

period during which he sought administrative remedies is tolled."); *Bourguignon v. Armstrong*, No. 06-CV-0259, 2007 WL 2495230, at *2-4 (D. Conn. Aug. 28, 2007) (discussing existing circuit law in the absence of governing Second Circuit authority and concluding that the circuits addressing the matter have held that the limitations period should be tolled while a prisoner exhausts the available administrative remedies). For that reason, in this case, the period between the date that plaintiff filed his a grievance related to his removal from the CAD program, February 5, 2009, and when he received the CORC's final determination of that grievance on April 8, 2009, is tolled. Accordingly, plaintiff's claim arising from this fourth incident is timely.

The fifth incident detailed in plaintiff's complaint occurred on March 30, 2009. Although the events underlying that fifth claim occurred nearly three years prior to commencement of this action, the claim is timely, and defendants do not argue otherwise. Defs.' Memo. of Law (Dkt. No. 37-1) at 4-5.

In sum, for the reasons set forth above, I recommend dismissal of the claims arising from the first three incidents described in plaintiff's complaint on the basis that they are untimely.

C.    Sufficiency of Plaintiff's Complaint

The fourth and fifth incidents described in plaintiff's complaint, occurring on February 1, 2009, and March 30, 2009, give rise to retaliation and conspiracy causes of action against several defendants.

1.    Analysis of the Incident Arising on February 1, 2009

As it relates to the incident on February 1, 2009, liberally construed, plaintiff's complaint asserts a First Amendment retaliation claim against defendant Donald, arising from allegations that he removed plaintiff from the CAD program out of retaliation for plaintiff filing grievances against him. Complaint (Dkt. No. 1) at 14.  Specifically, the complaint alleges that plaintiff "has reason to believe that the actions performed by defendant Donald[] were motivated by retaliation for previous complaints/grievances that had been recently filed [against] Donald[] by the Plaintiff[.]"  *Id.*  In addition, the complaint asserts supervisor liability against defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar for their alleged failure to reinstate plaintiff into the CAD program after learning of defendant Donald's alleged retaliation.  *Id.* at 17-19.

a. <u>Allegations Against Defendant Donald</u>

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate, motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.). "[P]rison officials' conduct constitutes an 'adverse action' when it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Alicea v.*

24

*Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

In this instance, the allegations in plaintiff's complaint are sufficient to satisfy the first and second elements of a retaliation claim by alleging that defendant Donald issued a misbehavior report to plaintiff out of retaliation for plaintiff filing grievances against him. Complaint (Dkt. No. 1) at 14. It is well settled that the filing of grievances and lawsuits constitutes protected activity for purposes of a First Amendment retaliation analysis. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right."); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances."). Similarly, courts in this circuit have found that removal of a prisoner from the CAD program constitutes adverse action. *See Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) ("It is also undisputed that Defendants' removal of Plaintiff from the CAD Program was an adverse action, in satisfaction of the second element of a retaliation claim.") (citing *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999)).

Plaintiff's complaint fails, however, to allege facts that plausibly suggest the third, causation element of a retaliation analysis. Plaintiff merely alleges that defendant Donald removed him from the CAD program because of the "recent[]" grievances filed by plaintiff against Donald. Complaint (Dkt. No. 1) at 14. No other details are provided regarding the grievances, including, for example, the specific timing of when plaintiff filed the grievance in relation to defendant Donald's alleged adverse action. Mindful that the Second Circuit has advised district courts to be wary of retaliation claims "because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003), I find that the allegations contained in plaintiff's complaint fail to plausibly suggest a causal connection between the grievance plaintiff filed against defendant Donald, and Donald's alleged decision to remove plaintiff from the CAD program. Accordingly, I recommend that this claim be dismissed as against defendant Donald.

        b.      Defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar

Defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar all appear to have been sued on the basis of their supervisory capacities at Auburn. *See generally* Complaint (Dkt. No. 1). In support of their

motion to dismiss, defendants argue that the claims arising from incidents that are not otherwise time barred fail to state a cognizable claim because plaintiff's complaint fails to allege facts plausibly suggesting the personal involvement of any of defendants. Defs.' Memo. of Law (Dkt. No. 37-1) at 5.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

Where, as in this case, a complaint asserts a cause of action against a

27

defendant based solely on his capacity as a supervisor, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also  Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.  It is well-established, however, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501.

In this case, plaintiff's supervisor liability claims against defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar fail for the simple reason that plaintiff's complaint does not give rise to a cognizable section 1983 action against defendant Donald, which is the precise basis for his claims against those defendants.  As explained above, to state a cognizable

section 1983 claim, there must be sufficient facts alleged to plausibly suggest "a tangible connection between the acts of a defendant and the injuries [the plaintiff] suffered." *Bass*, 790 F.2d at 263. Because the supervisor liability claims asserted against defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar hinge upon the retaliation claim asserted against defendant Donald, which I find to be unsupported by the allegations in plaintiff's complaint, those claims also must fail.[9] Accordingly, I recommend dismissal of

---

[9] This point is not insignificant where, based on the allegations in the complaint, I would otherwise be compelled to find that sufficient facts have been alleged to suggest the requisite personal involvement of defendants Schattinger, Haponik, McCarthy, Murray, and Lindquist, had I recommended that the retaliation claim against defendant Donald survive. More specifically, plaintiff's complaint alleges that those defendants are liable in their supervisory capacities because, after learning of defendant Donald's alleged unconstitutional removal of plaintiff from the CAD program, each of them failed to "remedy the wrong" by, presumably, reinstating him in the program. Complaint (Dkt. No. 1) at 17-19. It is alleged that plaintiff notified each of those defendants by a letter inquiring into his removal, or by his grievance filed against defendant Donald as a result of the removal. *Id.* At this early stage in the litigation, these allegations are sufficient to satisfy the personal involvement requirement for a section 1983 claim. Had plaintiff alleged sufficient facts to state a cognizable retaliation claim against defendant Donald, which is the basis of his supervisor liability claims against defendants Schattinger, Haponik, McCarthy, Murray, and Lindquist, I would recommend that those defendants survive the pending motion to dismiss. However, because the plaintiff has failed to allege sufficient facts to support a claim against defendant Donald, I recommend that defendants Schattinger, Haponik, McCarthy, Murray, and Lindquist be dismissed from the action.

As it relates to the allegations against defendant Matasar, however, those fail to allege his personal involvement. The allegations against that defendant are as follows:

> Defendant Graham is <u>NOT</u> being considered as a defendant in regards to this specific [incident], however, he did state in his Superintendent's Response [to] Grievance #AUB-53641-09 that according to [defendant Matasar], . . . 'when an inmate violates the terms of the CAD Diet, the facility reserves the right to terminate thee CAD Diet.' . . . [D]efendant Matasar violated the written terms and conditions of the contract that define the rights

the supervisor liability claims against defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar that arise from the retaliation claim asserted against defendant Donald.

## 2. Incident Arising on March 30, 2009

Turning to the incident occurring on March 30, 2009, plaintiff's complaint asserts a retaliation claim against defendant Murray based on allegations that he issued a misbehavior report to plaintiff out of retaliation for plaintiff's refusal to sign a form before participating in a vocational program. Complaint (Dkt. No. 1) at 20-21. Plaintiff also asserts a conspiracy to retaliate claim against defendants Giannone and Murray based on allegations that those two defendants orchestrated the issuance of the misbehavior report in an effort to violate plaintiff's rights. *Id.* at 22.

As it relates to the retaliation claim against defendant Murray, which provides the basis for the conspiracy claim asserted against both defendants Murray and Giannone, the first inquiry is whether there are sufficient facts set

---

and obligations of the parties where the language employed is clear and unambiguous.

Complaint (Dkt. No. 1) at 19. At most, these allegations suggest that defendant Matasar recited a facility or institution-wide policy regarding the CAD program to defendant Graham, which fails to give rise to supervisor liability. Accordingly, even if I was to recommend that the retaliation claim against defendant Donald survive, I would recommend that the supervisor liability claim against defendant Matasar be dismissed for failure to allege facts plausibly suggesting his personal involvement in the constitutional deprivations alleged.

forth in the complaint to plausibly suggest plaintiff was engaged in constitutionally protected conduct. *Mount Healthy City Sch. Dist. Bd. of Educ.,* 429 U.S. at 287; *Dillon*, 497 F.3d at 251; *Garrett*, 2003 WL 22299359, at *4. Liberally construed, plaintiff alleges that he had a right to refuse to sign the "Vocational Class Safety Rules" form prior to beginning his vocational training because he had a medical condition that prevented him from doing so with his right hand. Complaint (Dkt. No. 1) at 20. Plaintiff, however, also refused to sign with his left hand, and provides no basis for that refusal. *Id.* Even considering these allegations in the light most favorable to plaintiff, I cannot discern the involvement of any constitutionally protected conduct, and plaintiff provides no authority for determining that he had a constitutional right to refuse to sign the safety form. Accordingly, because plaintiff's complaint fails to satisfy the first prong of the retaliation analysis, I recommend that the claim be dismissed as against defendant Murray.

Moreover, because I find that plaintiff has failed to set forth a cognizable retaliation claim against defendant Murray, I recommend that the conspiracy claim asserted against him and defendant Giannone also be dismissed because, where no constitutional violation exists, a conspiracy claim must fail. *See O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y.

2004) ("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy[.]"); *Singer v. Fulton Cnty. Sheriff's Dep't*, No. 92-CV-1561, 1994 WL 549741, at *5 (N.D.N.Y. Oct. 4, 1994) (Hurd, M.J.), *aff'd* 63 F.3d 110 (2d Cir. 1995) ("Without a [constitutional] violation, there can be no actionable conspiracy.").

### D. Whether to Grant Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where the court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). In this instance, given the procedural history of the action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

With respect to plaintiff's claims arising from the incidents on October 5, 2008, November 3, 2008, and November 19, 2008, I recommend that plaintiff be denied leave to amend. Plaintiff's complaint is admirably specific and

comprehensive in detailing the relevant events, thereby providing the court with sufficient information to accurately evaluate defendants' statute of limitations defense to those claims.  In addition, plaintiff has already endeavored to argue that those claims should be treated as timely under the doctrine of equitable tolling, and I am recommending rejection of that contention.  Accordingly, I conclude that it would be futile to permit plaintiff to amend his complaint with regard to those claims.

Turning to the claim of retaliation asserted against defendant Donald for removing plaintiff from the CAD program, I find that the deficiencies identified in this report with respect to that claim could be cured by the inclusion of greater details in an amended pleading.  Accordingly, I recommend that plaintiff be granted leave to file an amended complaint as it relates to his retaliation claim against defendant Donald, and, by extension, his supervisor liability claims against defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar.

Finally, I find that any proposed amendment to plaintiff's retaliation and conspiracy to retaliate claims asserted against defendants Murray and Giannone would be futile in light of the fact that the protected activity on which he bases his claim (*i.e.*, refusing to sign a safety form before participating in a

vocational program) is not constitutionally cognizable. Therefore, I recommend that plaintiff be denied leave to replead those claims in any amended complaint.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action sets forth allegations relating to five distinct incidents upon which different constitutional claims are asserted against the defendants. The claims arising from the first three incidents are untimely based upon the chronology detailed in plaintiff's complaint, and the court finds no basis to invoke equitable tolling with respect to those claims. The claims arising from the fourth and fifth incidents are not time barred, but are subject to dismissal for other reasons. Specifically, the retaliation and supervisory liability claims arising from the fourth incident, occurring on February 1, 2009, are subject to dismissal due to plaintiff's failure to allege facts that plausibly suggest a causal connection between defendant Donald's alleged removal of plaintiff from the CAD program and plaintiff's grievances filed against that defendant. The retaliation and conspiracy claims asserted against defendants Murray and Giannone fail because plaintiff does not have a constitutionally protected right to refuse to sign a safety form prior to engaging in a vocational program at a prison facility. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 37) be GRANTED, and that plaintiff's complaint be DISMISSED, but that plaintiff be granted to leave to replead solely as it relates to his retaliation claim against defendant Donald, and, by extension, his supervisory liability claims against defendants Schattinger, Haponik, McCarthy, Murray, Lindquist, and Matasar.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     August 29, 2013
           Syracuse, New York


David E. Peebles
U.S. Magistrate Judge


Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Larry TINSLEY, Plaintiff,
v.
Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow Correctional
Facility; Gary Yule, Corrections Officer, Great Meadow
Correctional Facility; and David Roberts, Senior
Counselor, Great Meadow Correctional Facility,
Defendants.
**No. 95-CV-1765 (RSP/DRH).**

March 31, 1997.

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of counsel,
for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a
report-recommendation and order by Magistrate Judge
David R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his

confinement. Report-recommendation, Dkt. No. 24, at
9-10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty of
possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence
were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S. 472,
----, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ---- (1995).
Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin.* I have reviewed the entire
file in this matter, including plaintiff's many submissions,
and I find that he failed to raised any issue of fact to
support an alleged deprivation of his due process liberty
interests. Magistrate Judge Homer's thorough
report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of September
13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon the parties by regular mail.

IT IS SO ORDERED.
HOMER, United States Magistrate Judge.

REPORT-RECOMMENDATION AND ORDER [FN1]

> FN1. This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

*2 Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

## I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by

Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [FN2] and was given a contraband receipt for the cigarette that was removed from his cell.

> FN2. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [FN3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

> FN3. DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); *Walker v. Bates*, 23 F.3d 652, 654 (2d Cir.1994), *cert. denied*, 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Federal Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994).

**\*3** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

### 1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3-7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[FN4] In their motion for summary judgment, defendants contend that under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff lacked any liberty interest protected by the Due Process Clause.

> FN4. New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1-.7 (1995).

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir.1995). Under *Sandin,* a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes *atypical and*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996) (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995), *cert. denied,* 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996) (segregation without more implicates no liberty interest); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir.1995)(placement in administrative segregation not atypical and significant in context of life sentence).

*4 Several judges in this district have adopted this position. *See Polanco v. Allan,* No. 93-CV-1498, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996) (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91-CV-510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky,* 899 F.Supp. 923, 927 (N.D.N.Y.1995) (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94-CV-530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94-CV-1119

(N.D.N.Y. Jan. 10, 1996) (Report-Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96-2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91-CV-1445 (N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95-CV-1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996) (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff's confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth,* 88 F.3d 431, 433-34 (7th Cir.1996) (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.1996) (noting *Sandin* decided by only 5-4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 37-38 (2d Cir.1996); *see also Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin,* No. 95-CV-1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996) (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ----, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927-28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ----, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302-05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ----, 115 S. Ct. at 2302.

Moreover. confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock,

including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302-05.[FN5]

> **FN5.** Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution. *Cf. Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no right to remain in particular prison created by state law); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ---- - ----, 115 S.Ct. at 2299-2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin.*

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under *Sandin.* Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are

confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise these due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

**\*7** Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official.[FN6]

> FN6. A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251-3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. FN7

> FN7. Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. FN8 In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. FN9 Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

> FN8. In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the

marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

> FN9. Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

4. *Qualified Immunity*

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

**\*8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656-57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

### III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted.[FN10]

> FN10. Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in

response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

### IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

*9 Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.
Tinsley v. Greene

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Stanley W. McPHERSON, Petitioner,
v.
J. BURGE and H.D. Graham, Respondents.
No. 9:06-CV-1076 (GTS/VEB).

May 5, 2009.
West KeySummary**Habeas Corpus 197** ⛃ 603.4

197 Habeas Corpus

  197III Jurisdiction, Proceedings, and Relief
    197III(A) In General
      197k603 Limitations, Laches or Delay
        197k603.4 k. Bar of limitations in general.
Most Cited Cases
    (Formerly 197k603)
  A defendant's claim for habeas relief, concerning the prison's withholding of good time credits for failure to participate in drug abuse treatment, was barred by the statute of limitations. The defendant filed the claim more than one year after learning of the administrative decision to revoke his good time credits. There were no extraordinary circumstances that prevented the defendant from filing the claim in a timely manner. 28 U.S.C. § 2224(d)(1)(D).
Stanley W. McPherson, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Frederick H. Wen, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.
  **\*1** Stanley W. McPherson ("Petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on August 31, 2006. (Dkt. No. 1.) By Report-Recommendation dated January 27, 2009, the Honorable Victor E. Bianchini, United States Magistrate Judge, recommended that the Petition be denied and dismissed, and that a certificate of appealability not issue. (Dkt. No. 15.) Petitioner timely filed his Objections to the Report-Recommendation on February 4, 2009. (Dkt. No. 16.) For the reasons discussed below, Magistrate Judge Bianchini's Report-Recommendation is accepted and adopted in its entirety, and Petitioner's petition is denied and dismissed in its entirety.

### I. STANDARD OF REVIEW

  When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[FN1] When only general objections are made to a magistrate judge's report-recommendation (or the objecting party merely repeats the allegations of his pleading), the Court reviews for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).[FN2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

>     FN1. On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40, n. 3 (2d Cir.1990)* (district court did not abuse discretion in denying plaintiff's request to present additional testimony where he "offered no justification for not offering the testimony at the hearing before the magistrate").

FN2. *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

## II. BACKGROUND

For the sake of brevity, the Court will not repeat the factual background of Petitioner's 1991 conviction for Second Degree Attempted Murder and Second Degree Criminal Possession of a Weapon because Petitioner does not contest his judgment of conviction. (Dkt. No. 15, at 1.) Likewise, the Court will not repeat the factual background surrounding Petitioner's contention that the Auburn Correctional facility improperly withheld six years and eight months of good time credits on or about June 23, 2003, as a result of Petitioner's refusal to participate in a drug abuse treatment program, but will simply refer the parties to the relevant portions of Magistrate Judge Bianchini's Report-Recommendation, which accurately recite that factual background. (Dkt. No. 15, at 1-4.)

In his Petition, Petitioner asserts seven claims in support of his request for habeas relief.[FN3] In his Report-Recommendation, Magistrate Judge Bianchini recommends that the Court deny each of these claims as not timely under the one-year limitations period, established by 28 U.S.C. § 2224(d)(1)(D). (*Id.* at 5-6.) In his Objections to Magistrate Judge Bianchini's Report-Recommendation, Petitioner simply states that he objects to the Report-Recommendation. (Dkt. No. 16.)

FN3. These claims are discussed in Magistrate Judge Bianchini's Report-Recommendation. (Dkt. No. 15, at 4.)

**\*2** Because Petitioner has not made specific objections to the recommendations in Magistrate Judge Bianchini's Report-Recommendation, the Court need only review the Report-Recommendation for clear error. *See, supra,* Part I of this Decision and Order. After carefully reviewing all of the papers in this action, including Magistrate Judge Bianchini's Report-Recommendation, the Court agrees with each of the recommendations made by Magistrate Judge Bianchini, and rejects Plaintiff's general objection. (Dkt. No. 15; Dkt. No. 16.) [FN4] Magistrate Judge Bianchini employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Dkt. No. 15, at 5-12.) As a result, the Court accepts and adopts Magistrate Judge Bianchini's Report-Recommendation in its entirety for the reasons stated therein.

FN4. The Court notes that Magistrate Judge Bianchini's Report-Recommendation would also survive *de novo* review.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Bianchini's Report-Recommendation (Dkt. No. 15) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Petitioner's petition (Dkt. No. 1) is *DENIED* and *DISMISSED* in its entirety; and it is further

**ORDERED** that a Certificate of Appealability shall not issue; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly and close the file.

## REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.
### I. INTRODUCTION
Petitioner Stanley W. McPherson, acting *pro se,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 1991, he was convicted in a New York State court of two counts of Second Degree Attempted Murder, and one count of Second Degree Criminal Possession of a Weapon. Petitioner does not contest his judgment of conviction, but challenges a decision by the Auburn Correctional Facility to withhold six years and eight months of good time credits as a result of Petitioner's refusal to participate in a drug abuse treatment program.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 13).

## II. BACKGROUND

**A. Facts**[FN1]

> FN1. In the interest of judicial economy and because Petitioner does not contest his underlying conviction in this case, this Court will not discuss, in depth, the facts of Petitioner's underlying conviction, trial, or appeals. Rather, this Court will discuss Petitioner's appeals that are relevant to his current habeas petition.

On April 22, 1990, Petitioner approached two women in the Bronx and asked them if they knew where he could buy some "smoke." When they were unable to direct him, he left and came back with a gun and shot and injured the two women as they tried to run away from him. (Docket No. 9 at Exhibits B & H). On December 6, 1991, Petitioner was convicted of two counts of attempted murder in the second degree, and criminal possession of a weapon in the second degree. He was sentenced to concurrent terms of ten (10) to twenty (20) years on each of the two attempted murder counts, and three (3) to six (6) years on the weapon possession count. *See People v. McPherson,* 198 A.D.2d 119, 603 N.Y.S.2d 828 (1st Dep't 1993).

**\*3** During Petitioner's prison intake interview, he admitted using marijuana regularly from 1981 through 1986 and stated that he had recently smoked it on a daily basis. A drug abuse program was recommended for

Petitioner, however, he refused to participate. On June 3, 2003, Petitioner appeared at a hearing of the Auburn Correctional Facility Time Allowance Committee ("TAC"). Based on Petitioner's refusal to participate in the drug abuse program, the TAC recommended that all of Petitioner's good time credits, totaling six years and eight months, be withheld from his sentence. (Docket No. 9 at Exhibits A at 3 & B). The TAC advised Petitioner that he could request a reappearance if he completed the drug abuse program. (*Id.* at Exhibit B). Respondent Burge confirmed the TAC's recommendation on June 3, 2003. Petitioner administratively appealed that decision, which was affirmed on June 23, 2003. (*Id.* at Exhibit A at 5 & B).

## B. Article 78 Proceedings

On November 13, 2003, Petitioner, proceeding *pro se,* filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). Petitioner asserted that the withholding of his good time credits violated his Fourteenth Amendment rights. (Docket No. 9, Exhibit A at 2-11). Petitioner argued that there was no evidence of positive drug urinalysis in his record while he was incarcerated. (*Id.* at 3). Therefore, Petitioner argued, in light of the fact that he did not use drugs while incarcerated, he did not qualify for the program and should not have been required to participate. (*Id.*).

The Honorable Joseph C. Teresi, Justice of the New York State Supreme Court, dismissed Petitioner's Article 78 petition on April 28, 2004. On May 11, 2004, Petitioner appealed to the Appellate Division, Third Department, which affirmed the Supreme Court's dismissal of his petition. *McPherson v. Goord,* 17 A.D.3d 750, 793 N.Y.S.2d 230 (3d Dep't 2005).

The Appellate Division stated that:

Although petitioner contends that the recommendation that he participate in a substance abuse program was in error given the absence of any drug abuse in the underlying crimes or in his institutional record, the record establishes that just prior to committing the instant offense, petitioner asked the victims of the crime where he could buy some 'smoke.' Furthermore, the presentence investigation report indicates that petitioner admitted to the use of marihuana.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

*Id.* at 751, 793 N.Y.S.2d 230. The New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision on September 15, 2005. *McPherson v. Goord,* 5, N.Y.3d 709 (2005).

## C. Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se,* commenced this action on August 31, 2006, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). In his Petition, Petitioner asserts that: (1) withholding his good time credits for his refusal to attend the drug abuse program when the program did not apply to him violated his constitutional rights; (2) "[a] Due Process violation in procedure and determination. A Liberty Interest as of mandatory conditional release."; (3) his Fourteenth Amendment rights were violated when he was not conditionally released from his indeterminate sentence after completing 2/3 of his sentence; (4) his rights under the Ex Post Facto Clause were violated by Respondents adding the drug abuse program as a requirement in order for Petitioner to obtain his good time credits after he was incarcerated and that Respondents failed to transcribe the hearing proceedings; (5) the Appellate Division violated his equal protection rights in reviewing Petitioner's pre-sentence report *in camera* without Petitioner and without giving Petitioner an opportunity to review the report; (6) the Time Allowance Committee violated Petitioner rights by failing to record or transcribe the hearing; and (7) his Fifth Amendment rights were violated by Respondents' failure to follow proper procedure and by "failing to following [sic] the statute § 7804 of CPLR." (Docket No. 1).

**\*4** Respondent filed a Response and memorandum of law in opposition on December 29, 2006. (Docket No. 6). Thereafter, on January 3, 2007, Respondent filed an Amended Answer and Memorandum of Law. (Docket No. 8). Petitioner filed his Traverse on January 17, 2007. (Docket No. 17). This case was referred to the undersigned by Order of the Honorable Norman A. Mordue, Chief United States District Judge, on October 27, 2008. (Docket No. 13).

## III. DISCUSSION

### A. Timeliness

A state prisoner challenging the loss of good time credits must bring an action for habeas corpus relief under 28 U.S.C. § 2254. *Jenkins v. Duncan,* No. 02-CV-0673, 2003 WL 22139796, at *3 (N.D .N.Y. Sep. 16, 2003); *see also Cook v. New York State Div. of Parole,* 321 F.3d 274, 278-79 (2d Cir.2003) (holding that state prisoner "must bring a challenge to the execution of his or her sentence ... under § 2254").

Petitioner challenges the execution of his sentence, namely, the TAC's decision to revoke his good time credits. As such, the Petition was properly brought pursuant to § 2254. However, because Petitioner is a "person in custody pursuant to the judgment of a state court," he was required to file his petition for habeas corpus relief in accordance with the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See Cook,* 321 F.3d at 280 (concluding that limitations period of § 2244 applies to petitions under § 2254).

Section § 2244(d)(1) provides, in pertinent part, as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

In the present case, Petitioner is not challenging the judgment of conviction, there was no state action that impeded Petitioner from seeking habeas relief, and there is no issue regarding retroactive application of a constitutional right recognized by the Supreme Court. As such, the one-year limitations period began running, pursuant to § 2244(d)(1)(D), on the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

**\*5** Thus, this Court must determine the date on which the factual predicate of Petitioner's claims could have been discovered with due diligence. The Second Circuit faced an analogous situation in *Cook.* The petitioner in *Cook* was challenging the revocation of his parole. The Second Circuit concluded that the factual predicate for the petitioner's claim reasonably would have been discovered when he "was notified that the administrative decision to revoke his parole had become final." *Cook,* 321 F.3d at 280.

Petitioner challenges the revocation of his good time credits, arguing that the administrative decision in that regard violated his federal constitutional rights. Thus, in accordance with the Second Circuit's reasoning in *Cook,* this Court finds the "factual predicate" of Petitioner's claims was readily identifiable on the date the administrative decision to revoke his good time credits became final.

This raises the question of when Petitioner was notified that the revocation of good time credits was "final." The TAC recommended on June 3, 2003, that Petitioner's good time credits be revoke. That decision was adopted by the superintendent of the correctional facility on that same date. The superintendent's decision was upheld on administrative appeal on June 23, 2003. It is not clear from the record when Petitioner was notified of this decision. However, there is no allegation of undue delay or any reason to believe that Petitioner was not notified at or about the time of the decision.

On September 17, 2003, the chair of the TAC responded to a "recent memo" from Petitioner requesting reconsideration of the decision. As such, the record clearly indicates that Petitioner was aware of the administrative decision underlying his claims prior to September 17, 2003 (as evidenced by the fact that he sent a memo to the TAC requesting a reconsideration).

Because the actual date of notice of the Superintendent's decision upholding the revocation of good time credits is uncertain, out of an abundance of caution, this Court will use September 16, 2003, as the latest possible date upon which Petitioner could have been notified that the TAC's recommendation had been approved by the facility's superintendent and upheld on administrative review.[FN2] As such, Petitioner's deadline to commence this action would have expired on September 16, 2004, absent statutory or equitable tolling

> FN2. Respondent notes that October 14, 2003, might also be considered as the date on which the withholding of good time credits became "final." On that date, a second reconsideration request by Petitioner was denied. This Court finds that September 16th is the more appropriate date, as that was the last possible date on which Petitioner would have been notified that the TAC's recommendation had been adopted by the superintendent and affirmed on administrative appeal. At that point, Petitioner was clearly aware of the factual predicate of the claims that he raises in this action. In any event, even if October 14th was used as the starting date for a statute of limitations calculation, the instant Petition is still untimely.

**B. Statutory Tolling**

The one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) is modified by § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Under this subsection, the word "pending" designates the "end point" of the tolling period, *Fernandez v. Artuz,* 402 F.3d 111, 116 (2d Cir.2005), and "an application for state review is 'pending' until it has achieved final review

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

through the state's post-conviction procedures." *Foster v. Phillips,* No. 03 Civ. 3629, 2005 WL 2978686, at *4 (S.D.N.Y. Nov. 7, 2005) (citing *Carey v. Saffold,* 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)); *accord, e.g., King v. Cunningham,* 442 F.Supp.2d 171, 180 n. 15 (S.D.N.Y.2006).

**\*6** In addition, the Second Circuit has held that the "proper calculation of Section 2244(d)(2)'s tolling provision *excludes* time during which properly filed state relief applications are pending but does not *reset* the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (emphases added); *accord Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir.2002).

In this case, the statute of limitations is statutorily tolled from November 13, 2003, when Petitioner filed his Article 78 proceeding,[FN3] until September 15, 2005, when the Court of Appeals of New York denied his application for leave to appeal. Thus, on September 15, 2005, Petitioner's Article 78 had completed the final stage of review and was no longer considered "pending" for tolling purposes.

> FN3. The Article 78 Petition is stamped as received by the Albany County Clerk on April 28, 2004. The Article 78 Petition was dated November 13, 2003. It is not clear why there was such a substantial gap between the date of filing and the date contained on the Article 78 Petition. Again, giving Petitioner every benefit of the doubt, this Court will consider the Article 78 Petition has having been filed on November 13, 2003.

Fifty-eight (58) days passed between September 16, 2003, the latest date on which Petitioner could have been "notified" of the decision to withhold his good time credits, and November 13, 2003, when he filed his Article 78 proceeding. Three hundred fifty (350) days elapsed between September 15, 2005, when the Court of Appeals denied Petitioner's application for leave to appeal, and August 31, 2006, when Petitioner filed this action for habeas relief.

With regard to this August 31, 2006 date, it should be noted this Court has given Petitioner the benefit of the "prisoner mailbox rule." The Petition was not actually filed by the Clerk of this Court until September 7, 2006. Per the "mailbox rule," a motion or pleading filed by a *pro se,* incarcerated petitioner is deemed filed the day that he or she turned the pleading over to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk).

It is not clear when Petitioner delivered the Petition to prison officials. However, courts in this Circuit have generally concluded that "[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." *Torres v. Irvin,* 33 F. Supp .2d 257, 270 (S.D.N.Y.1998) (citing *Hunter v. Kuhlman,* 97 Civ. 4692, 1998 WL 182441, at *1 n. 2 (S.D.N.Y. Apr.17, 1998) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997); *Jones v. Artuz,* No. CV 97-2394, 1997 WL 876735, at *1 (E.D.N.Y. Sept. 13, 1997)); *accord Johnson v. Coombe,* 156 F.Supp.2d 273, 277 (S.D.N.Y.2001). In accordance with this practice, this Court deems the Petition filed on August 31, 2006, the date it was signed by Petitioner.

Based on the foregoing calculations, this Court finds that four hundred and eight (408) days of untolled time passed between the latest possible date on which Petitioner was aware of the factual predicate underlying his claim (September 16, 2003)[FN4] and the date that he filed the instant case (August 31, 2006). The Petition for habeas relief is therefore untimely and barred by the one-year statute of limitations set forth in § 2244.

> FN4. The Petition is untimely even if October 14, 2003, the date on which Petitioner's second reconsideration request was denied, is used as the date on which Petitioner was aware of the factual predicate underlying his claims. Using that date, three-hundred eighty (380) days of untolled time

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

elapsed prior to the filing of this case.

## C. Equitable Tolling

**\*7** The one-year period set forth in AEDPA for the filing of federal habeas petitions is a statute of limitations, not a jurisdictional bar. *Smith,* 208 F.3d at 17. However, it is only in " ' rare and exceptional circumstances' " that AEDPA's limitations period may be subject to equitable tolling. *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) (quoting *Smith,* 208 F.3d at 17)).

Consequently, the period may be equitably tolled only if a petitioner is able to show that extraordinary circumstances prevented him from filing his petition earlier and that he acted with reasonable diligence throughout the period sought to be tolled. *Id.* "Extraordinary circumstances" are events which were "beyond [petitioner's] control" and which prevented successful filing during the one-year time period. *Smaldone v. Senkowski,* 273 F.3d 133 (2d Cir.2001).

Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000). Thus, the petitioner must show that extraordinary circumstances "prevented" him from filing on time. *Id.* at 133-34.

There is no indication in the record of any extraordinary circumstances that operated to prevent Petitioner from timely filing his application for habeas relief. In particular, there is no evidence that the nearly one year delay between the conclusion of the Article 78 proceeding and the filing of this case was caused by any events beyond Petitioner's control. Petitioner's *pro se* status does not, in and of itself, entitle him to equitable tolling. *Id.* (citing *Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir.1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.")); *see also Francis v. Miller,* 198 F.Supp.2d 232, 235

(E.D.N.Y.2002) (stating that petitioner's ignorance of the law and legal procedures are not extraordinary circumstances); *Armand v. Strack,* No. 98 Civ. 6650, 1999 WL 167720, at \*5 (E.D.N.Y.Feb.19, 1999) (noting that lack of access to law clerks, illiteracy, lack of English fluency and ignorance of the law have all been considered and rejected by courts as insufficient to demonstrate exceptional circumstances); *Fennell v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1998) (holding that equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, would undermine AEDPA's statute of limitations).

Accordingly, this Court finds that equitable tolling is not warranted in this case and therefore recommends that the Petition be dismissed as untimely filed and barred by the applicable statute of limitations.

## IV. CONCLUSION

**\*8** For the reasons stated above, the Court recommends Stanley McPherson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. *See* 28 U.S.C. § 2253(c)(2) (1996).

## V. ORDERS

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

**SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolak v. Canadair Ltd. .,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

N.D.N.Y.,2009.

McPherson v. Burge
Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.)))

C

This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,

Second Circuit.
Pawel CZERNICKI, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF JUSTICE,
Defendant-Appellee.
Docket No. 04-4058-CV.

June 24, 2005.

**Background:** Federal prisoner brought tort claim against government under Federal Tort Claims Act (FTCA). The United States District Court for the Eastern District of New York, John Gleeson, J., dismissed complaint for lack of subject matter jurisdiction. Prisoner appealed.

**Holding:** The Court of Appeals held that prisoner did not show extraordinary circumstances to entitle him to equitable tolling of two-year limitations period on presenting claim to federal agency.

Affirmed.

West Headnotes

**[1] United States 393** ☞ **113**

393 United States

   393VIII Claims Against United States
      393k113 k. Presentation, Allowance, and Adjustment. Most Cited Cases
   Federal prisoner was not entitled to equitable tolling of two-year limitations period in which to file administrative claim with federal agency under Federal Tort Claims Act (FTCA) absent showing that extraordinary circumstances prevented his timely filing. 28

U.S.C.A. § 2401(b).

**[2] Federal Courts 170B** ☞ **752**

170B Federal Courts

   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)1 In General
         170Bk752 k. Matters or Evidence Considered. Most Cited Cases
   New evidence presented by federal prisoner for first time on appeal would not be considered in reviewing dismissal of his Federal Tort Claims Act (FTCA) complaint. 28 U.S.C.A. §§ 1346, 2671 et seq.

**\*410** Pawel Czernicki, Brooklyn, New York, for the Appellant, pro se.

Warshawsky, Steven M., Assistant United States Attorney, Eastern District of New York (Steven Kim, Assistant United States Attorney, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief), Brooklyn, New York, for the Appellee, of counsel.

Present: MINER, STRAUB, Circuit Judges, and KEENAN,[FN*] District Judge.

   **FN\*** The Honorable John F. Keenan, United States District Judge, Southern District of New York, sitting by designation.

**SUMMARY ORDER**

   **\*\*1** AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

   Plaintiff-Appellant Pawel Czernicki ("Czernicki") appeals from the November 18, 2003 judgment of the United States District Court for the Eastern District of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.)))

New York (John Gleeson, *Judge*), which granted Defendant-Appellee's motion to dismiss the amended complaint for lack of subject matter jurisdiction. We assume the parties' familiarity with the facts of this case, its procedural posture, and the decision below.

When reviewing a district court's dismissal for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), this Court reviews factual findings for clear error and legal conclusions *de novo. Close v. New York,* 125 F.3d 31, 35-36 (2d Cir.1997) (citations omitted). Under the Federal Tort Claims Act ("FTCA"), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues ...," 28 U.S.C. § 2401(b), and we have explained that, "[u]nless a plaintiff complies with that requirement, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim," *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 189 (2d Cir.1999). For substantially the same reasons provided by the District Court, we hold that Czernicki has failed to demonstrate that he filed an administrative claim within the two-year statute of limitations under the FTCA.

[1][2] Moreover, we agree with the District Court's finding that the doctrine of equitable tolling should not apply in this case. We have applied the doctrine of equitable tolling in "rare and exceptional circumstances," where we found that "extraordinary circumstances" prevented a party from timely performing a required act and that party "acted with reasonable diligence throughout the period he [sought] to toll." *Doe v. Menefee,* 391 F.3d 147, 159-60 (2d Cir.2004). In *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court explained that the doctrine of equitable tolling can apply to cases filed against the United States, and that it is within the discretion of the district court to equitably toll the statute of limitations "where the claimant has actively pursued his judicial remedies by filing a defective **411 pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." In *Kronisch v. United States,* 150 F.3d 112, 123 (2d Cir.1998), we explained that the FTCA's limitations period "will be

equitably tolled so long as defendants' concealment of their wrongdoing prevented plaintiff from becoming aware of, or discovering through the exercise of reasonable diligence, his cause of action." The record clearly indicates that Czernicki failed to file a timely administrative claim, and he presented no evidence to the District Court demonstrating that extraordinary circumstances warrant the tolling of the statutory period.[FN1]

FN1. For the first time, Czernicki submits in his appeal the declaration of fellow inmate Ron Reale, which suggests that Czernicki was dissuaded by prison officials from filing an FTCA claim. The Government subsequently moved to strike the declaration as new evidence that was not first presented to the District Court. We grant the Government's motion and decline to consider this evidence for the first time on appeal. *See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.,* 54 F.3d 69, 72-73 (2d Cir.1995) (declining to consider appellant's argument not raised in district court absent a showing of manifest injustice or extraordinary need).

**2 We have considered all of Czernicki's claims on this appeal and find that each of them is unavailing. Accordingly, the Government's motion to strike Mr. Reale's declaration is GRANTED and the District Court's order dismissing the amended complaint for lack of subject matter jurisdiction is AFFIRMED.

C.A.2 (N.Y.),2005.

Czernicki v. U.S. Dept. of Justice
137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.))
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2495230 (D.Conn.)

(Cite as: 2007 WL 2495230 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court,

D. Connecticut.
Bristout BOURGUIGNON, Plaintiff,
v.
John ARMSTRONG, et al., Defendants.
No. 3:06CV0259(WIG).

Aug. 28, 2007.
Bristout Bourguignon, Somers, CT, pro se.

Robert Bishop Fiske, III, Attorney General's Office, Public Safety & Special Revenue, Hartford, CT, for Defendants.

*RULING AND ORDER*

WILLIAM I. GARFINKEL, United States Magistrate Judge.

**\*1** Plaintiff Bristout Bourguignon brings this civil rights action *pro se* alleging that defendants Delaney, Brunski, Bakanowski, Herbert and Doe used excessive force against him on December 15, 2002, and that he was denied medical attention for eight days. On December 8, 2006, the court granted the defendants' motion to dismiss as to all claims except the excessive force claim. Because the case was before the court on a motion to dismiss, the court was unable to eliminate the possibility that the limitations period for filing this claim should be equitably tolled. *See* Doc. # 22.

The defendants timely moved for reconsideration. *See* Doc. # 24. On February 21, 2007, the court construed the motion for reconsideration as a motion for summary judgment on the issue of equitable tolling and afforded the parties the opportunity to present additional evidence for the court's consideration. *See* Doc. # 29.

I. *Standard of Review*

In a motion for summary judgment, the burden is on

the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's case. *See PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002) (per curiam). The court construes the facts in the light most favorable to the nonmoving party. *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,* 444 F.3d 158, 162 (2d Cir.), *cert. denied,* 127 S.Ct. 382 (2006). Where one party is proceeding *pro se,* the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

II. *Facts*

Bourguignon alleges that defendants Delaney, Brunski, Bakanowski, Herbert and Doe used excessive force against him on December 15, 2002, and thereafter denied him medical care from December 15 to December 23, 2002. Bourguignon has attached the relevant grievance forms to his complaint. He submitted a Level 1 Grievance regarding the assault on December 20, 2002. The grievance was denied on February 1, 2003, and he filed his Level 2 Grievance on February 5, 2003. When Bourguignon did not receive a response to his Level 2 appeal, he submitted a Level 3 Grievance on March 8, 2003.

Bourguignon included his excessive force claim in the January 2003 complaint he filed in *Bourguignon v. Armstrong, et al.,* No. 3:03cv232(RNC). On March 31, 2005, the court granted defendants' motion to dismiss the excessive force claim on the ground that Bourguignon had not fully exhausted his administrative remedies before filing the complaint. Although Bourguignon had completed the exhaustion process by that time, he did not file a new complaint containing the excessive force claim. Instead he filed a motion for reconsideration. The court denied the motion for reconsideration on December 14, 2005.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2495230 (D.Conn.)

(Cite as: 2007 WL 2495230 (D.Conn.))

**\*2** Bourguignon signed his complaint, prisoner authorization form and motion to proceed *in forma pauperis* in this case on January 10, 2006. He submitted these documents to the court with a copy of his inmate trust account statement dated February 7, 2006. The documents reached the court on February 17, 2006.

III. *Discussion*

The limitations period for filing a section 1983 action is three years. *See Lounsbury v. Jeffries,* 25 F.3d 131, 134 (2d Cir.1994)(holding that, in Connecticut, the general three-year personal injury statute of limitations period set forth in Connecticut General Statutes § 52–577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983). The incidents underlying the complaint occurred from December 15 to December 23, 2002. Thus, Bourguignon had until December 23, 2005, to file his complaint.

The Second Circuit has held that a *pro se* prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (citing *Houston v. Lack,* 487 U.S. 266, 270 (1988)). Bourguignon signed his complaint, prisoner authorization form and motion to proceed *in forma pauperis* on January 10, 2006. With these documents, he submitted a copy of his inmate trust account statement dated February 7, 2006. Applying the "mailbox rule," the court concludes that the earliest possible date Bourguignon could have given the packet of documents to correctional officials for mailing is February 7, 2006. Thus, the complaint was not filed until at least 46 days after the limitations period expired. Unless the limitation period is tolled, the complaint was untimely filed.

Like the limitations period, tolling provisions for section 1983 actions derive from state law. The federal courts apply state tolling provisions unless the state rules would "defeat the goals" of section 1983. *See Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002), *cert. denied,* 538 U.S. 922 (2003).

Federal law now requires inmates to exhaust their administrative remedies before commencing an action in federal court. "No action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000 ed.). Thus, proper exhaustion of all available administrative remedies is a mandatory prerequisite to filing a section 1983 action in federal court. *See Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006). In light of this mandatory requirement, all of the courts of appeal addressing the issue have held that the limitations period for filing a section 1983 action is tolled while an inmate exhausts his administrative remedies. *See Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir.2005); *Johnson v. Rivera,* 272 F.3d 519, 521 (7th Cir.2001); *Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir.2000); *Harris v. Hegmann,* 198 F.3d 153, 158 (5th Cir.1999).

**\*3** The Fifth and Seventh Circuits based their determination on the tolling provisions of the state in which the claim accrued. Both Louisiana and Illinois permit the limitations period to be tolled where there is a statutory prohibition to filing suit. The courts found the Prison Litigation Reform Act's revision of section 1997e(a) to be such a statutory prohibition.

The Sixth and Ninth Circuits, however, did not consider whether there were any applicable state tolling provisions. Instead, they observed the interplay between the statute of limitations and the mandatory exhaustion requirement. The courts found that it would be inequitable to permit correctional officials to substantially restrict the limitations period by delaying resolution of the grievance process. *See Brown,* 422 F.3d at 942. Thus, the courts held, as a matter of federal law, that the limitations period is tolled while an inmate exhausts his administrative remedies. District courts from other circuits also have held that the limitations period is tolled without any consideration of state tolling provisions. *See, e.g., Lopez v. South Carolina Dep't of Corrections,* C.A. No. 3:06–2512–PMD–JRM, 2007 WL 2021875, at \*2, (D.S.C. July 6, 2007); *Smith v. Warden, New Hampshire State Prison,* No. Civ. 05–CV–374–JD, 2006 WL 1425063, at \*3 (D.N.H. Apr. 25, 2006); *Howard v. Snyder,* Civil Action No. 01–376–SLR, 2002 U .S. Dist. LEXIS 9084, at \*4 (D.Del. May 14, 2002). The District of New Jersey has held that a prisoner's claim does not

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2495230 (D.Conn.)

(Cite as: 2007 WL 2495230 (D.Conn.))

accrue until the prisoner has had an opportunity to exhaust his administrative remedies.[FN1] However, the prisoner cannot be dilatory in fully exhausting those remedies. *See D'Allesandro v. Bugler Tobacco Co.,* Civil No. 05–5051(JBS), 2007 WL 748443, at *8, *10 (D.N.J. Mar. 7, 2007).

> FN1. Although New Jersey permits tolling where there is a statutory prohibition to filing suit, the district court cited this provision only as an alternate reason for tolling the limitations period. *See D'Allesandro,* 2007 WL 748443, at *9.

The Second Circuit has not yet addressed this issue. *See Sims v. Goord,* 151 Fed. Appx. 12, 14 (2d Cir.2005) ("[W]e have not previously settled whether the statute of limitations for a civil rights claim by an incarcerated inmate should be tolled while the inmate exhausts administrative grievance procedures pursuant to the Prisoner Litigation Reform Act."). In a recent case, the Second Circuit acknowledged the issue, but had no reason to decide it, because even assuming that the limitations period had been tolled while the plaintiff exhausted his administrative remedies, his lawsuit was still untimely. *Abbas v. Dixon,* 480 F.3d 636, 641 (2d Cir.2007).

Within the Second Circuit, no district court has yet applied this general tolling principle. The Western District of New York did toll the limitations period where, as in this case, the inmate had not exhausted his state court remedies before first attempting to assert his claim. However, the court relied on New York's accidental failure of suit statute, N.Y. C.P.L.R. 205(a), and did not address the unanimous conclusion of courts of appeal addressing the issue that the exhaustion requirement of section 1997e(a) mandates tolling the limitations period. *See Allaway v. McGinnis,* 362 F.Supp.2d 390, 393–94 (W.D.N.Y.2005); *see also Hayes v. N.Y.S. D.O.C. Officers,* No. 97 Civ. 7383 MBM, 1998 WL 901730, at *6 (S.D.N.Y. Dec. 28, 1998) (noting that if plaintiff pursued administrative remedies after the PLRA's effective date, the statute of limitations would have been tolled under New York law permitting tolling where there is a statutory prohibition to filing suit, N.Y. C.P.L.R. § 204(a)).

**\*4** Only one Connecticut district court case has

addressed this issue. In that case, however, the claim accrued at a time when it was not clear that exhaustion of administrative remedies was mandatory. The court noted that, if, on further consideration, it determined that exhaustion was mandatory, the court would toll the limitations period. *See Peddle v. Sawyer,* 64 F.Supp.2d 10, 12 (D.Conn.1999).

The mandatory exhaustion requirement enables the Department of Correction to rectify its own mistakes without court intervention. The process promotes efficient resolution of issues or, if that is not possible, creates a record that will facilitate judicial review of the matter. *See Woodford,* 1126 S.Ct. at 2385. This court finds persuasive those decisions concluding that the purpose of that requirement would be frustrated if the limitations period were not tolled while an inmate exhausts his administrative remedies.

The Department of Correction requires that inmates file a Level 1 grievance within thirty days from the date of the incident and a Level 2 grievance within five days from the receipt of the response to the Level 1 grievance. Correctional staff must respond to Level 1 and Level 2 grievances within thirty days. *See* Connecticut Department of Correction Administrative Directive 9.6, Sections 1 0 ( G ) , 1 5 & 1 6 , *http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf* (last visited Aug. 27, 2007). Bourguignon appears to have timely complied with the Department of Correction grievance procedures. His Level 1 grievance is dated December 20, 2002, five days after the excessive force incident. The grievance was denied on February 1, 2003. In another attached grievance, Bourguignon states that he did not receive a response to his February 5, 2003 Level 2 grievance appeal. Thus, he would be deemed to have exhausted his administrative remedies on March 7, 2003. Tolling the limitations period while Bourguignon exhausted his administrative remedies results in the limitations period expiring on March 7, 2006. Thus, Bourguignon's complaint, filed on February 7, 2006, was timely filed.

## IV. *Conclusion*

The defendants' motion for reconsideration [**doc. #

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2495230 (D.Conn.)

(Cite as: 2007 WL 2495230 (D.Conn.))

**24**], which the court has construed as a motion for summary judgment on the issue of equitable tolling, is **DENIED.**

This is **not** a recommended ruling. The parties consented to the exercise of jurisdiction by a magistrate judge and, on October 31, 2006, the case was transferred to the undersigned for all purposes including entry of judgment. (*See* Doc. # 17.)

**SO ORDERED.**

D.Conn.,2007.

Bourguignon v. Armstrong
Not Reported in F.Supp.2d, 2007 WL 2495230 (D.Conn.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr. Facility; James A. Mance, Deputy Superintendent of Programs; John O'Reilly,[FN1] Deputy Superintendent; J. Burge, First Deputy; M. Maher, DSS; R. Centore, Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and the docket confirms that defendant John O'Reilly has never been served. Service must be made upon a defendant within 120 days of filing the complaint or any claims against that defendant will be dismissed. See Fed.R.Civ.P. 4(m). The original complaint, which named O'Reilly, was filed on November 26, 1999, and the amended complaint was filed on July 13, 2001. However, O'Reilly was never served. Since this defendant has never been served, this court lacks jurisdiction over him, and this court recommends the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.
Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York, Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

REPORT-RECOMMENDATION

SHARPE, Magistrate J.
I. *Introduction* [FN2]
> FN2. This matter was referred to the undersigned for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under 42 U.S.C. § 1983 claiming that the defendants violated his civil rights when they retaliated against him for his activities as an IGRC representative by subjecting him to verbal harassment, physical abuse and subsequently, a transfer. Garrett also claims that the supervisory defendants failed to properly investigate his complaints and failed to train/supervise their employees. This court recommends denying the motion for summary judgment in part and granting it in part.

II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint against the defendants claiming that they violated his civil rights under the First, Sixth Eighth, and Fourteenth Amendments.[FN3] On September 28, 2001, the defendants filed a motion for summary judgment. On January 18, 2002, this court issued an order informing Garrett of his obligation to file a response and extended his time to respond for thirty days. On April 24, 2002, this court granted an additional sixty days to respond to the defendants' motion. Despite having been given multiple opportunities to respond, Garrett has failed to file a response.

> FN3. Although Garrett claims to be raising violations under the Sixth, Eighth, and Fourteenth Amendments, the only viable claim based on this court's interpretation of the complaint is under the First Amendment for retaliation.

III. *Facts* [FN4]

> FN4. The facts are taken from the defendants' statement of undisputed material facts since Garrett failed to file a response.

On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U.S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp 2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet Keith,
Otisville Medical Department, Defendants.
No. 91 CIV. 8135.

Jan. 24, 1994.
MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an inmate
then in confinement at the Federal Correctional Institution
in Otisville, New York ("Otisville"), filed this action for
injunctive relief and damages based upon alleged
violations of his rights under the United States
Constitution, Amendments I, IV, V, VI, IX, and XIII, and
upon violations of various laws and/or regulations
governing prison administration.[FN1] The Complaint named
as defendants G.L. Hershberger ("Hershberger"), the
United States Attorney General ("Attorney General"),
Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the
Bureau of Prisons ("BOP"), and the Otisville Medical
Department ("OTV Medical Department") (collectively
"Defendants"). Defendants moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of
Civil Procedure, or, in the alternative, for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set out below, Defendants'
Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint,
pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure, for failure to state a claim upon which relief

can be granted. Rule 12(c) provides:

> After the pleadings are closed but within such time as
> not to delay the trial, any party may move for judgment
> on the pleadings. If, on a motion for judgment on the
> pleadings, matters outside the pleadings are presented to
> and not excluded by the court, the motion shall be
> treated as one for summary judgment and disposed of as
> provided in Rule 56, and all parties shall be given
> reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are
employed for dismissing a complaint for failure to state a
claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a
Rule 12(c) motion to dismiss for failure to state a claim
upon which relief can be granted. See Ad–Hoc Comm. of
the Baruch Black & Hispanic Alumni Ass'n v. Bernard M.
Baruch College, 835 F.2d 980, 982 (2d Cir.1987); see
also Viacom Int'l. Inc. v. Time, Inc., 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R.
Miller, Federal Practice and Procedure ¶ 1367, at 515–16
(1990). Thus, the Court must read the Complaint
generously, drawing all reasonable inferences from the
complainant's allegations. See California Motor Transp.
v. Trucking Unlimited, 404 U.S. 508, 515 (1972).
Moreover, "consideration is limited to the factual
allegations in [the] amended complaint, which are
accepted as true, to documents attached to the complaint
as an exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to documents
either in plaintiff['s] possession or of which plaintiff[ ] had
knowledge and relied on in bringing suit." Brass v.
American Film Technologies, Inc., 987 F.2d 142 (2d
Cir.1993); accord Allen v. Westpoint–Pepperell, Inc., 945
F.2d 40, 44 (2d Cir.1991); Cortec Indus., Inc. v. Sum
Holding L.P., 949 F.2d 42, 47–48 (2d Cir.1991), cert.
denied, 112 S.Ct. 1561 (1992); Frazier v. General Elec.
Co., 930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to state a
claim only if the Court finds beyond a doubt that "plaintiff
can prove no set of facts" to support the claim that
plaintiff is entitled to relief. See Conley v. Gibson, 355
U.S. 41, 45–46 (1957).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

### II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

### III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))

mentioned by name any of the individual named Defendants. Defs' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have

participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

> FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

> FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.

Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 549741 (N.D.N.Y.)

(Cite as: 1994 WL 549741 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daniel S. SINGER, Plaintiff,
v.
FULTON COUNTY SHERIFF'S DEPARTMENT, its
Agents and Employees; Fulton County Sheriff; Stewart's
Ice Cream Company, Inc.; Its Agents and Employs
Raymond Shuler, Individually; Andrea Nicollela,
Individually; The Village of Northville, County of
Fulton, its Agents and Employs; Sheldon Ginter,
Individually and as Mayor of Village of Northville;
James Groff, Individually, as a Deputy Sheriff and as
Village of Northville, Village Board Member; James
Hillman, Individually and as Deputy Sheriff; Deputy
Hillier, Individually and as Deputy Sheriff; Martin
Kested, Individually and as Deputy Sheriff, Defendants.
No. 92–CV–1561.

Oct. 4, 1994.

Martin J. Kehoe, III, Albany, NY, for Plaintiff.

Robert A. Murphy, Jr., Albany, NY (James E. Conway, of
counsel), for defendants FCSD, Fulton County Sheriff,
Hillman, Hillier and Kested.

Dreyer, Boyajian & Tuttle, Albany, NY (Damon J.
Stewart, of counsel), for defendants, Village of Northville,
Ginter and Groff.

Office of Belinda Wagner, Albany, NY, for defendants
Stewart's Ice Cream Co., Inc., Shuler and Nicollela.

*MEMORANDUM–DECISION AND ORDER*

HURD, United States Magistrate Judge.
I. *Introduction.*
   *1 This action was initiated by the plaintiff, Daniel
Singer, pursuant to 42 U.S.C. § 1983, alleging violations
of his civil rights. There are three federal civil rights
claims. These are (1) false arrest; (2) malicious

prosecution; and (3) conspiracy. In addition, there is also
a pendent state claim for damages based upon the common
law tort of malicious prosecution.
   The "Fulton County defendants" are the Fulton
County Sheriff's Department, Fulton County Sheriff,
Deputy Sheriff James Hillman, Deputy Sheriff Hillier, and
Deputy Sheriff Martin Kested. The "Northville
defendants" are the Village of Northville, Sheldon Ginter
(Mayor), and James Groff (Board Member). The "Stewart
defendants" are Stewart's Ice Cream Company, Inc., and
its employees Raymond Shuler and Andrea Nicollela.

   The plaintiff alleges that the defendants conspired to
intimidate, discriminate, and harass him which ultimately
resulted in his false arrest, false imprisonment, and
malicious prosecution on the charge of petit larceny. This
conspiracy was allegedly an attempt to quiet the plaintiff
because he focused public attention on the way some of
the defendants were doing their jobs through the use of a
newsletter published by him. The plaintiff's claims are
based on alleged violations of his civil rights under the
First, Fourth and Fourteenth Amendments to the United
States Constitution.

   There are presently five motions before the court. The
Fulton County defendants and the Northville defendants
have moved for summary judgment pursuant to Rule 56
of the Federal Rules of Civil Procedure. The Northville
defendants have also moved for sanctions against the
plaintiff. The plaintiff has cross-moved for summary
judgment, and has also moved for sanctions against the
Village of Northville defendants.

II. *Summary Judgment.*

   A motion for summary judgment must be granted
when the pleadings, depositions, answers to
interrogatories, admissions and affidavits show that there
is no genuine issue as to any material fact, and that the
moving party is entitled to summary judgment as a matter
of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 247 (1986); *Lang v. Retirement Living Pub.
Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 549741 (N.D.N.Y.)

(Cite as: 1994 WL 549741 (N.D.N.Y.))

carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., 475 U.S. at 586.* At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

III. *Facts.*

**\*2** On October 20, 1991, at approximately 2:15 p.m., plaintiff, in the discharge of his duties as a State Forest Ranger, entered the Northville Stewart's Shop to gather provisions for an ongoing search and rescue. Plaintiff advised the store clerk, Ray Shuler ("Shuler") (whom he knew on a first name basis) of his intentions to pay for the goods at a future date, left an itemized list of the goods and their prices with Shuler, and left the store.

At approximately 3:00 p.m. the clerk contacted his manager, Andrea Nicollela ("Nicollela"), who came to the store. She waited several more hours for Deputy Sheriff Martin Kested ("Kested") to arrive. It is not clear who called the police. When Kested arrived at the Stewart's Shop, Nicollela, Shuler, and Kested went to the back room of the store and remained there for some length of time. Between 6:05 and 6:16 p.m., Shuler completed and signed an information and supporting deposition charging plaintiff with petit larceny of the items with a value of $11.55. By that time, the plaintiff had returned home from the search and rescue. Kested went to plaintiff's home to make the arrest. Upon seeing a deputy at the door, plaintiff

got up from the supper table believing Kested had come to inform him of another emergency. Instead Kested read him the Miranda warnings and arrested him at 6:45 p.m. for petit larceny despite plaintiff's explanation regarding the search and rescue. Plaintiff was arraigned in Northamptom Town Court and released on his own recognizance.

By order of Fulton County Judge Michael Mazzone, dated August 12, 1992, the matter was transferred to the Gloversville City Court. On November 19, 1992, the charge of petit larceny was dismissed by City Court Judge Mario Papa "in the interests of justice."

IV. *Discussion.*

A. *Termination of the petit larceny charge.*

One of the essential elements of a prosecution for false arrest, false imprisonment, and/or malicious prosecution is that the prior criminal action complained of must be terminated in plaintiff's favor, or he may not maintain an action pursuant to § 1983. Thus, the plaintiff "must allege and prove that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged." *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980). In defining a favorable termination, the Court stated that "[p]roceedings are terminated in favor of the accused only when the final disposition is such as to indicate that [the] accused is not guilty." *Id.* at 193.

In the instant case, prosecution of plaintiff's case was dismissed, in the interest of justice, as opposed to an adjournment in contemplation of dismissal. Thus, the underlying rationale for prohibiting a § 1983 malicious prosecution and false arrest claim remains. Under New York law, a dismissal in the interest of justice leaves the question of guilt or innocence unanswered. *Rounseville v. Zahl,* 819 F.Supp. 1148, 1161 (N.D.N.Y.1993) (citing *Ryan v. New York Tel Co.,* 62 N.Y.2d 494, 504–505, 478 N.Y.S.2d 823, ____ (1984)). Specifically, the Second Circuit has held that a case dismissed in the interest of justice does not satisfy the favorable termination requirement for a § 1983 claim. *Hygh v. Jacobs,* 961 F.2d 359, 367–368 (2d Cir.1992). Therefore, where a plaintiff's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 549741 (N.D.N.Y.)

(Cite as: 1994 WL 549741 (N.D.N.Y.))

claims for false arrest and/or malicious prosecution is lacking the favorable termination element, the claims are prohibited.

**\*3** In order to determine whether or not the petit larceny charge was terminated in plaintiff's favor with an indication that he was not guilty, a close reading of the proceedings before Judge Papa on November 19, 1992, must be reviewed. The pertinent portion of those proceedings are as follows:

THE COURT: Okay. Then I'm going to dismiss this. And *I'm going to dismiss this action in the interests of justice and on the basis that the District Attorney is not able to produce a witness at trial.*

MR. SISE: I would state, your Honor, just for the record, that it is our position in this case that the witness, who we are doubtful that would appear, was the reason why the defendant was arrested by the Fulton County Sheriff's Department in that that witness supplied the Sheriff's Department with probable cause that a person left the Stewart's Store with items from the Stewart's without permission, without adequate permission, and that is why the petit larceny charge was filed by the Fulton County Sheriff's Department, but we understand the Court's position and the reason for the dismissal in that we cannot give the Court assurance because we have not been able to contact that witness and to assure this Court and our office that the witness will appear.

THE COURT: And for the record, the conference we had in my office was that we were going to make a decision today whether we were going to go forward or not. *In light of the fact that there is no witness able to be produced* on behalf of the People, I think that *in the interests of everybody involved here,* and even potentially the tremendous expense of obtaining that witness if he's over in Europe, *I'm going to dismiss. Okay, Mr. Singer?*

DEFENDANT SINGER: *Yes, sir.*

THE COURT: You're free to go home.

MR. KEHOE: *Your Honor, thank you.*

THE COURT: You're welcome. (emphasis added).

Because the record is clear that the termination was made without any indication that the plaintiff was innocent of the charge of petit larceny, there is no need for a hearing on this issue. The charge was terminated because the key prosecution witness (Shuler) was not available. More important, the plaintiff did not protest, and in fact, agreed to such a termination. Judge Papa specifically asked him whether or not he agreed with the disposition "in the interest of justice," and he replied, "Yes, sir." He was represented by counsel at that time. Counsel also indicated his approval of the disposition by stating, "Your Honor, thank you."

A further indication that the charge was not dismissed on the merits stems from the conference held shortly thereafter before Magistrate Judge Ralph W. Smith on December 2, 1992. At that time, an attorney for the Stewart defendants indicated that the Fulton County District Attorney was contemplating renewal of the charge if the testimony of Shuler was taken in this case. The plaintiff's attorney was present and made no statement to the contrary. In fact, he seemed to agree that the charge of petit larceny could be reinstated. This point bears mention because if the charge was dismissed on the merits in City Court, it could not be reinstated because of the rule against double jeopardy. No one considered the dismissal by Judge Papa to be with prejudice on the merits, or with any indication that the plaintiff was innocent of the petit larceny charge.

**\*4** Therefore, since an essential element of the plaintiff's claims for false arrest, false imprisonment, and malicious prosecution can never be proven, those claims must be dismissed.

B. *False Arrest.*

The existence of probable cause for the arrest of plaintiff further supports this finding. No cause of action exists for an alleged violation of civil rights where an arrest is supported by probable cause. *O'Neill v. Babylon,* 986 F.2d 646, 649 (2d Cir.1993). "Probable cause is a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 549741 (N.D.N.Y.)

(Cite as: 1994 WL 549741 (N.D.N.Y.))

fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). "There is probable cause when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.' " *O'Neill,* 986 F.2d at 650 (quoting *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989)). The court looks only to the information that the arresting officer had at the time of the arrest. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

In this case, Kested was advised by Shuler as a clerk in the Stewart's Ice Cream Shop, and his supervisor, Nicollela, that plaintiff had taken items with a value of $11.55 from the store without paying for same. Shuler signed a supporting deposition to this effect. As a matter of law, under the circumstances, Kested had probable cause to arrest the plaintiff for petit larceny.

In addition, Kested would be entitled to qualified immunity as a matter of law, so long as "no reasonable jury, looking at the evidence in the light most favorable to and drawing, all inferences most favorable to, the plaintiffs could conclude that it was objectively unreasonable for the defendant to believe he was acting in a fashion that did not clearly violate an established federal protected right." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986)). Deputy Kested's belief that he had probable cause to arrest the plaintiff was reasonable, and was grounded in the facts. *Wachtler v. County of Herkimer,* —— F.3d ——, No. 93–9135, 1994 WL 498622 at *—— (2d Cir. Sept. 9, 1994) ("An arresting officer is entitled to qualified immunity from a claim for unlawful arrest if 'either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' " (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)), *cert. denied,* 112 S.Ct. 3032 (1992))). Because it was objectively reasonable for Kested to arrest plaintiff based upon statements given to him by Shuler and Nicollela and Shuler's signed deposition, Kested is entitled

to qualified immunity. *Id.* This is not a subjective test. Kested's bad judgment or negligence is not material. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Burns v. Reed,* 500 U.S. 478, ——, 111 S.Ct. 1934, 1944 (1991) (The defense of qualified immunity "provides ample support to all but the plainly incompetent or those who knowingly violate the law." (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986))).

C. *Malicious Prosecution.*

**\*5** In addition to the fact that an essential element of the malicious prosecution claim cannot be met by the plaintiff, a majority of Justices in the Supreme Court recently adopted a very negative view of attempts to bring malicious prosecution claims under § 1983. *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807 (1994). The First Circuit expounded upon this view in *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42 (1st Cir.1994), stating, "*Albright* would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under § 1983." Therefore, if the persuasive reasoning of the First Circuit in *Perez–Ruiz* were followed, the plaintiff's attempt to bring a federal malicious prosecution claim against the defendants would be foreclosed under *Albright* as well.

D. *Conspiracy.*

The same reasoning as was applied in Section A above, applies to the conspiracy claims. The plaintiff cannot sustain his § 1983 claim based on conspiracy since he cannot show that his rights were violated by his arrest/imprisonment or prosecution because he cannot demonstrate a favorable termination. In order to prove a conspiracy, plaintiff's constitutional rights must be violated. *See Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992); *see also Spear v. Town of West Hartford,* 771 F.Supp. 521, 529 (D.Conn.1991), *aff'd* 954 F.2d 63 (2d Cir.1992), *cert. denied* 113 S.Ct. 66 (1992); *and Bergman v. Stein,* 404 F.Supp. 287 (S.D.N.Y.1975). Without a violation, there can be no actionable conspiracy.

Further "... complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." *Dukes*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 549741 (N.D.N.Y.)

(Cite as: 1994 WL 549741 (N.D.N.Y.))

*v. New York,* 743 F.Supp. 1037, 1043 (S.D.N.Y.1990) (citing *Ostreicher v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977)); *see also Estes–El v. New York,* 552 F.Supp. 885 (S.D.N.Y.1982). The complaint in this case falls squarely within the above definition. Specific allegations are difficult, if not impossible to find.

E. *Stewart Ice Cream defendants.*

The Stewart Ice Cream defendants have not moved for summary judgment. However, the Federal claims against them must also be dismissed *sua sponte* for the above reasons.

F. *Pendent State Claim.*

"It is well settled that 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well.' " *West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990) (citations omitted) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). This decision is in keeping with the principle that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Robison,* 821 F.2d at 925.

Having determined that plaintiff's federal claims must be dismissed, and there being no diversity of citizenship between the parties, the court declines to take jurisdiction of the state law claim. In addition, the state common law claim of malicious prosecution would be barred for the same failure to prove the essential element of favorable termination on the merits of the underlying criminal charge. *Colon v. City of New York,* 60 N.Y.2d 78, 82 (1983).

G. *Sanctions and Attorneys Fees.*

**\*6** No sanctions will be made against any party. Although the plaintiff's claims are dismissed, the court must comment that Kested showed an extraordinary lack of common sense in making this arrest, even though he did have "probable cause." It was equally irresponsible for Shuler to make a complaint and sign a deposition. The time, money, and effort that has been expended in this matter is a direct result of the incredibly poor judgment of a number of individuals. If only some common sense had

prevailed, this could all have been avoided. In fact, the day following the arrest, October 21, 1991, Nicollela signed a deposition indicating she was willing to drop the charges. This was not done. Instead, there were years of criminal and civil litigation involving at least four judges, and a half a dozen lawyers.

The inappropriate motive of the plaintiff in bringing the action against the Northville defendants is clear from his statements made before the Village Board on January 18, 1994, and in his newsletter of January 1994. The atmosphere which prevails, and the animosity between plaintiff and the members of the Fulton County Sheriff's Department, the Village of Northville officials, and the Stewart Ice Cream Co., Inc. employees has led to this unfortunate series of events from arrest to dismissal, and from lawsuit to dismissal. All sides share the blame, and it is for this reason that no sanctions will be assessed in favor of any side.

In addition, although the defendants are the "prevailing parties," any claim for attorney's fees is denied. *See Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir.1994) (Plaintiff's claim must have been frivolous, unreasonable, or groundless. Section 1988 attorney fees will rarely be awarded to prevailing defendants due in part to "the potential chilling effect of such an award on Section 1983 plaintiffs.") This entire case must be brought to an end.

Therefore, it is

ORDERED that

1. The motion by the defendants Village of Northville, Sheldon Ginter, and James Groff for summary judgment is granted;

2. The motion by the defendants Fulton County Sheriff's Department, Fulton County Sheriff, James Hillman, Deputy Hillier, and Deputy Martin Kested for summary judgment is granted;

3. The motion by the defendants Village of Northville, Sheldon Ginter, and James Groff for sanctions is denied;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 549741 (N.D.N.Y.)

(Cite as: 1994 WL 549741 (N.D.N.Y.))

4. The cross-motion by the plaintiff for summary judgment is denied;

5. The motion by the plaintiff for sanctions is denied;

6. The complaint is dismissed as against the defendants Stewart Ice Cream Company, Inc., Raymond Shuler, and Andrea Nicollela *sua sponte;* and

7. Attorney's fees are denied.

The Clerk is directed to enter judgment dismissing the complaint in its entirety.

IT IS SO ORDERED.

N.D.N.Y.,1994.

Singer v. Fulton County Sheriff's Dept.
Not Reported in F.Supp., 1994 WL 549741 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.